IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CHARLES J. SAIN**,

       Plaintiff,

vs.                                                                    No. CIV 08-1019 RB/LFG

**CAROLYN M. SNYDER, MARY E.
CHAPPELLE, L. HELEN BENNETT,
RICHARD STOOPS, PATRICIA
MADRID, GARY KING, BETSY
SALCEDO, STANLEY WHITAKER,
DEBORAH DAVIS WALKER, WILLIAM
F. LANG, JUANITA DURAN, LYNN
PICKARD, JAMES J. WECHSLER,
MICHAEL VIGIL, MICHAEL D.
BUSTAMANTE, A. JOSEPH ALARID,
EDWARD L. CHAVEZ, PETRA JIMENEZ
MAEZ, RICHARD C. BOSSON, BILL
RICHARDSON, BERNALILLO COUNTY
SHERIFF'S DEPARTMENT, ERNESTO J.
ROMERO, RODERICK KENNEDY, CHARLES
W. DANIELS, PATRICIO M. SERNA, ELIZABETH
E. WHITEFIELD, VICKI AIKENHEAD RUIZ and
JO ANNE DE HERRERA**,

       Defendants.

## MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT

       THIS MATTER comes before the Court on: Defendant Carolyn Snyder's Motion to Dismiss,

filed November 19, 2008 (Doc. 49); Defendant Bill Richardson's Motion to Set Aside Default, filed

December 2, 2008 (Doc. 70); Plaintiff Charles J. Sain's Motion to Amend/Correct, filed December

18, 2008 (Doc. 85); Sain's Motion to Amend/Correct, filed January 15, 2009 (Doc. 116); Defendants

A. Joseph Alarid's, Richard C. Bosson's, Michael Bustamante's, Edward L. Chavez's, Charles W.

Daniels, Roderick Kennedy's, Petra Jimenez Maes', Lynn Pickard's, Ernesto J. Romero's, Patricio

M. Serna's, Michael Vigil's, Deborah Davis Walker's, James J. Wechsler's, and Stanley Whitaker's

Motion to Dismiss, filed February 18, 2009 (Doc. 151); Defendants Patricia Madrid's and Betsy Salcedo's Motion to Dismiss, filed February 18, 2009 (Doc. 152); Defendants Juanita Duran's and William F. Lang's Motion to Dismiss, filed February 18, 2009 (Doc. 153); Defendants JoAnne DeHerrera and Vicki Aikenhead Ruiz's Motion to Dismiss, filed February 18, 2009 (Doc. 154); and Defendant Richardson's Motion to Dismiss, filed March 17, 2009 (Doc. 165). Having considered the submissions of the parties and the relevant law, and being otherwise fully advised, the Court concludes that the Motions to Amend the Complaint should be denied, that Snyder's and Richardson's motions should be granted, and that the Complaint, with its amendment/supplement, must be dismissed.

## I.      Background.

This case arises out of a lengthy and bitter divorce and child-custody suit that Sain's former wife, Defendant Snyder, filed in 2003 in the Second Judicial District Court, Bernalillo County, State of New Mexico. *See* Complaint (Doc.1) at ¶ 33. The divorce was extremely contentious, with Sain accusing Snyder of adultery and of lying to the Court about her income and assets, and of violating the state-court's interim orders. *See id.* & ¶¶ 42-44. Sain represented himself during the majority of the divorce proceedings. *See id.* at ¶ 55. At one point, Sain was arrested at a hearing, after being given an opportunity to testify, for his admitted failure to obey the state-court's order regarding payment of child support. Sain complains that he had not been given prior notice that the presiding judge, Defendant Ernest Romero, was going to rule on Snyder's "emergency" motion for contempt of court for failure to pay child support on the same day Snyder and her lawyer, Defendant Mary E. Chappelle, had filed the "emergency" motion. *See id.* at ¶¶ 78-84. Sain contends that Judge Romero also later improperly issued a restraining order against him, without receiving sufficient admissible evidence, on Chappelle's claim that Sain had threatened her, *see id.* at ¶¶ 112-120; and

that both the recorded transcript and the written record in the divorce case regarding that event had been "tampered with" and portions of the transcript were deleted and exhibits were not placed in the record. *See id.* at ¶¶ 121-131. Sain complains that Chief Judge Lang improperly issued an order requiring Sain to be accompanied by court security whenever he appeared at the courthouse for hearings, which allegedly placed his life in jeopardy. *See id.* at ¶¶ 503-06.

During the pendency of the divorce and custody case, state district-court judges Romero, Whitaker, and Walker all made rulings with which Sain disagreed. He appealed a number of those rulings to the New Mexico Court of Appeals and the New Mexico Supreme Court, and Sain now also sues the Defendant Judges Pickard, Wechsler, Vigil, Bustamante, Alarid, and Kennedy, and Defendant Justices Chavez, Serna, Maes, Bosson, and Daniels because of their rulings in those appeals, contending that the fact that he repeatedly lost in the state-court proceedings proves that there is an "Organized Criminal Enterprise that runs and controls with absolute corruption, brutality and tyranny the Courts of the State of New Mexico." Complaint at ¶ 1. Sain alleges that, throughout the course of the state-court proceedings he was "viciously and maliciously and illegally brutalized, terrorized and abused . . ." by individuals "operating under color of law within the New Mexico Second Judicial District Court, the New Mexico Appellate Court, [and] the New Mexico Supreme Court . . ." *Id.* at ¶ 34.

Sain's 256-page Complaint and eighteen-page Errata amending and supplementing his Complaint attempts to set forth thirty-nine causes of action against twenty-eight Defendants, all alleging that they violated his civil rights under 42 U.S.C. §§1981, 1982, 1983 and 1985, by violating the First, Ninth[1], and Fourteenth Amendments. *See* Doc. 1; Doc. 29 at 6. He seeks both

---

[1] "The Fourteenth Amendment applies to the States those specific rights contained in the first eight amendments of the Constitution which declare fundamental personal rights. In addition, the Fourteenth Amendment

compensatory damages and injunctive relief.

Sain's request for injunctive relief is directed at protecting unnamed New Mexico citizens from "irreparable injury" by the New Mexico courts in future litigation, and he seeks to accomplish this protection by the appointment of an omnipotent, federally-appointed monitor who will oversee the New Mexico courts, the attorney general, and the executives of the State, and establish, review, and enforce "all policies" related to the three branches of government. *See* Doc. 29 at 16. Under Sain's plan, the monitor would have the power to hire, fire, and promote all State officials, including the Governor, and could establish his or her own eleven-member Government Review Commission that would hear public complaints about government-employee misconduct and decide the discipline and/or innocence of the accused. *See id.*

## II.   Legal Standards.

### A.   Motions to dismiss.

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks and bracket omitted). A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.* at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965

---

encompasses and applies to the States those pre-existing fundamental rights recognized by the Ninth Amendment, which provides: 'The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.'" *Wise v. Bravo*, 666 F.2d 1328, 1332 (10th Cir. 1981).

(internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atl. Corp. v. Twombly*, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

*Id.* at 1248. Complaints in § 1983 actions subject to qualified-or-absolute immunity defenses

> must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.

> \* \* \* \*

> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Id.* at 1249 (internal quotation marks and citations omitted).  Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro se plaintiff.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**B.    The *Rooker-Feldman* doctrine.**

The *Rooker-Feldman* doctrine prevents federal district courts from assuming jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Guttman v. Khalsa*, 446 F .3d 1027, 1032 (10th Cir. 2006) (noting that the *Rooker-Feldman* doctrine applies only to "suits filed after state proceedings are final" and setting out what events may indicate such finality).  Even when the plaintiff does not request that the federal court overturn the state-court judgments, federal courts do not have subject-matter jurisdiction over § 1983 claims that effectively seek appellate review of the state-court divorce or child custody determinations.  *See Roman-Nose v. N.M. Dep't of Human Servs.*, 967 F.2d 435, 437 (10th Cir. 1992) (holding that dismissal of federal suit seeking damages in regard to state-court judgment terminating parental rights was proper "to the extent that Plaintiff's allegations can be construed as seeking redress for constitutional infirmities in the [state-court] proceeding under 42 U.S.C. § 1983").  Thus, plaintiffs are generally barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).  Instead, review of the state-court judgment and the underlying rulings must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257.

Further, the *Rooker-Feldman* doctrine bars consideration of constitutional claims that are

6

"inextricably intertwined" with the state-court judgment because the district court, "in essence, is being called upon to review the state-court decision." *D. C. Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16 (1983). A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

## III.   Analysis.

### A.   Sain lacks standing to request injunctive relief on behalf of future litigants.

The Article III standing requirement inherent in every cause of action brought in federal court "requires that a plaintiff establish injury-in-fact, causation and redressability." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007) "[T]he court *sua sponte* [] can raise the issue of standing for the first time at any stage of the litigation . . . ." *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008). That is true because "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc., v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (internal quotation marks and bracket omitted), *holding modified on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 781-82 (2004). To establish standing, the "complainant must allege an injury *to himself* that is 'distinct and palpable,' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Finstuen*, 496 F.3d at 1143 (internal quotation marks omitted, italics added). "In a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely

7

on 'subjective apprehensions' that the defendant might act unlawfully." *Id.* at 1144.  And "[e]ach plaintiff must have standing to seek each form of relief in each claim."  *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

Sain's divorce and custody proceedings in the district court are over, and his request for injunctive relief is directed at protecting unnamed New Mexico citizens from "irreparable injury" by the New Mexico courts if they should fail to follow the law in the future.  His request for injunctive relief, therefore not only does not seek to remedy a future harm to *himself*, but it also is not based on anything more than his subjective apprehension that the New Mexico courts may act unlawfully in the future.  Sain has not established standing to pursue the injunctive relief he requests, *see Finstuen*, 496 F.3d at 1143-44, and his claims for injunctive relief will be dismissed for lack of subject-matter jurisdiction.

**B.    The Court lacks subject-matter jurisdiction over Sain's claims for damages arising from allegedly erroneous state-court rulings.**

Sain's claims against the state-court judges and state employees, his ex-wife, and her attorneys, all arise out of the "damage" he purportedly suffered arising from what he alleges was fraudulent behavior on behalf of Snyder and her lawyers during the support and custody hearings that the state courts refused to rectify to his satisfaction, and from what he perceives as erroneous or unlawful rulings or alleged refusals to rule on his various motions.  *See, e.g.* Complaint at 14-17 (Counts 1 & 2 - alleging that Judge Romero is liable to Sain under § 1983 for failing to "Act Against Snyder for violating the TRD and for Hiding Funds in violation of a Court Order" because he arrested and incarcered Sain for violating a court order but only required Snyder to reimburse Sain for money she should have paid to him under interim orders instead of similarly holding her in contempt); *id.* at 21-22 (Counts 3 & 4 - alleging that Judge Romero is liable under § 1983 for failing

to hear Sain's Rule 60(B) motion before entering the divorce decree); *id.* at 25-27 (Count 5 - alleging that Judge Romero, Snyder, and Chappelle are liable under § 1983 for a "no-Notice attack" on Sain because he wasn't given prior notice that Judge Romero was going to hear Snyder's "Emergency Motion re Failure to Pay Child Support" on the same day that the Judge was going to hear some of Sain's various motions, and which resulted in Sain's arrest after he testified that he had not obeyed the Court's order); *id.* at 27-29 (Count 6 - alleging that Romero is liable under § 1983 for tampering with evidence in violation of New Mexico law because the recorded transcript did not contain the segments of the hearing showing that Judge Romero decided to hear Snyder's Emergency Motion on his own initiative, over Sain's objection); *id.* at 29-30 (Count 7 - alleging that Judge Romero, Snyder, and Chappelle are liable under § 1983 for conspiring to tamper with the record); *id.* at 30-42 (Count 8 - alleging that Judge Romero, Snyder, and Chappelle are liable under § 1983 because Romero issued a restraining order prohibiting Sain from coming within 100 feet of Chappelle's office without a written motion, and without sufficient evidence or sufficient prior notice to Sain of the hearing in which he participated); *id.* at 42-43 (Count 9 - alleging that Romero, Snyder and Chappelle are liable under § 1983 for tampering with the transcript and exhibits reflecting the hearing held on the oral motion for a restraining order); *id.* at 44 (Count 10 - alleging that Romero is liable under § 1983 for issuing the restraining order in violation of the state-court rules); *id.* at 52-53 (Count 11 - alleging that Judge Whitaker is liable under § 1983 for "perpetuating" the restraining order prohibiting Sain from going within 100 feet of Chappelle's office); *id.* at 53-54 (Count 12 - alleging that Judge Whitaker is liable under § 1983 for denying Sain's motion for reconsideration of his order refusing to set aside the restraining order); *id.* at 63-64 (Count 13 - alleging that Judge Whitaker is liable under § 1983 for failing to incarcerate Snyder for disobeying court orders); *id.* at 64-67 (Counts 14 & 15 - alleging that Judge Walker is liable under

§ 1983 for failing to take action against or incarcerate Snyder for disobeying custody orders); *id.* at 67-68 (Count 16 - alleging that Judges Romero, Whitaker, and Walker are liable under §§ 1983 and 1985 for conspiring to refuse to take action against or incarcerate Snyder for disobeying court orders); *id.* at 75 (Count 17 - alleging that Judge Walker is liable under § 1983 for denying Sain's motion regarding child custody); *id.* at 81 (Count 18 - alleging that Judges Alarid and Bustamante are liable under § 1983 for "failing to take action against Snyder, Chappelle and Bennett" after Sain accused them of lying during the appellate process); *id.* at 83 (Count 19 - alleging liability under § 1983 against Judges Alarid, Bustamante, and Kennedy for disregarding the deceit of, and failing to take action against, Snyder, Chappelle and Bennett during the appellate process); *id.* at 83-87 (Count 20 & 21 - alleging liability under § 1983 against Judges Alarid, Bustamante, and Kennedy for failing to make rulings consistent with their prior rulings and for conspiracy with the district court in failing to take action against Snyder, Chappelle, and Bennett); *id.* at 87-88 (Count 22 - alleging liability under § 1983 against Judges Alarid, Bustamante, and Kennedy for failing to make appellate rulings consistent with prior rulings); *id.* at 90-92 (Count 23 - alleging liability under § 1983 against Justices Chavez, Serna, Maes, Bosson, and Daniels for rulings made in alleged disregard of Snyder's, Chappelle's, and Bennett's deceit and for failing to take action against them); *id.* at 92-97 (Count 24 - alleging liability under § 1983 against Justices Chavez, Serna, Maes, Bosson, and Daniels for refusing to disqualify themselves to hear a petition for certiorari); *id.* at 97-98 (Count 25 - alleging liability under § 1983 against Justices Chavez, Serna, Maes, Bosson, and Daniels for refusing to allow Sain to present evidence of his alleged causes of action against the justices that he wanted to submit as part of his response to a petition for certiorari); *id.* at 98-103 (Count 26 - alleging liability under § 1983 against Justices Chavez, Serna, Maes, Bosson, and Daniels for quashing the petition for writ of certiorari as moot instead of taking action against Snyder, Chappelle, and Bennett); *id.*

at 103-106 (Count 27 - alleging liability under § 1983 against Justices Chavez, Serna, Maes, Bosson, and Daniels for denying a motion for reconsideration instead of taking action against Snyder, Chappelle, and Bennett); *id.* at 106-07 (Count 28 - alleging liability under §§ 1983 & 1985 against Judges Walker, Alarid, Bustamante, and Kennedy and Justices Chavez, Serna, Maes, Bosson, and Daniels for conspiring to carry out a policy not to take action against Snyder, Chappelle, and Bennett for their deceit and alleged crimes); *id.* at 107-121 (Count 29 - alleging that Judge Romero is liable to Sain under § 1983 for conspiring to carry out a policy of not taking action against Snyder, Chappelle, and Bennett by ruling against Sain); *id.* at 121-22 (Count 30 - alleging that Judge Romero is liable to Sain under § 1983 for failing to timely adjudicate Sain's Rule-060(b) motion); *id.* at 141 (Count 31 - alleging that Judge Vigil is liable to Sain under § 1983 because he should have recused himself from sitting on an appellate panel and that his failure to recuse resulted in Sain being unable to appeal); *id.* at 145 (Count 32 - alleging liability under §§ 1983 & 1985 against Judges Alarid, Bustamante, Sutin, Pickard, Weschler, and Vigil and against Justices Chavez, Serna, Maes, Bosson, and Minzner for conspiring to "carry out a policy for failing to have a policy when it comes to Appeals brought based on orally pronounced Orders" and for ruling inconsistently, but always against Sain); *id.* at 149-50 (Count 33 - alleging that Judge Romero is liable to Sain under § 1983 for allegedly lying about telling Sain he had to postpone his education and for refusing to file a written order to that effect); *id.* at 153 (Count 34 - alleging liability under §§ 1983 & 1985 against Judges Romero, Walker, Alarid, Bustamante, and Kennedy, and against Justices Chavez, Serna, Maes, Bosson, and Daniels for conspiring to carry out a policy to not take action "against Snyder, Chappelle, and Bennett for their deceit and crimes"); *id.* at 153-162 (Count 35 - alleging liability under § 1983 against Judges Whitaker and Lang, Clerk of Court Juanita Duran, Attorney General Patricia Madrid and assistant attorney Betsy Salcedo, Governor Richardson, and the Bernalillo

County Sheriff's Department because: (i) Chief Judge Lang issued an order without a hearing requiring Sain to be accompanied by court security guards whenever he appeared for hearings in district court, which "terrorized" and "humiliated" Sain and "endangered his life;" (ii) the order was backdated and allegedly unsupported by evidence of a real threat from Sain; (iii) Duran told Sain to put his requests for evidence supporting the order in writing; (iv) Salcedo filed a motion to quash Sain's subpoena to obtain evidence supporting the order and was supervised by Madrid; (v) Judge Whitaker granted the motion to quash subpoena; and (vi) Governor Richardson told Sain that Richardson could not intervene in judicial proceedings because of the separation-of-powers doctrine); *see* Errata (Doc. 29) at 6-8 (Count 6A - alleging that Judge Romero, Snyder, Chappelle, Guardian ad Litem Richard Stoops, and Justices Bosson, Serna, Maes, and Chavez are liable to Sain under §§ 1983 and 1985 because (i) Stoops allegedly violated interim orders; (ii) Snyder and Chappelle filed a motion to quash Sain's subpoena seeking testimony from his children's therapist and Romero granted the motion; (iii) Romero found Sain to be in civil contempt and had him arrested and incarcerated for refusing to pay child support; and (iv) the Justices denied Sain's petitions for emergency superintending control); *see* Doc. 29 at 8-10 (Counts 7A and 9A - alleging that Lang, Duran, Second Judicial District Court Managing Court Reporter Vicki Aikenhead Ruiz, and Court reporter Joanne DeHerrera, are liable to Sain under § 1983 because they did not make sure adequate safety and security measures were in place to protect the evidence and records "originating in Romero's courtroom during" either a June 9, 2005, a February 9, 2005, or a February 9, 2006 hearing "from being tampered with" and asserting that the appellate courts erroneously denied his contentions of error in that regard); *see id.* at 10-15 (Count 36 - alleging that all of the named Defendants are generally liable to Sain under § 1983 because of the events occurring during the divorce proceedings and the rulings of the various judges and justices that caused, among other

things, emotional trauma to him and the loss of the daily care and companionship of his two children and irreparable harm to his reputation and familial relationship).

In support of his causes of action Sain quotes extensively from the state-district-court transcripts of proceedings, references substantial numbers of orders and appellate rulings with which he disagrees, and bases his damages on the allegedly erroneous rulings and what he perceives as "case-fixing" because he lost in the majority of the rulings.  He showed that he had appealed from the adverse rulings to the New Mexico Court of Appeals and to the Supreme Court of New Mexico and had also petitioned for mandamus or injunctive relief.  He even improperly attempted to "remove" the state-court divorce and child custody case to federal court, contending that his "right to removal" was based on the Defendants' alleged violation of his constitutional rights in the divorce proceedings.  *See* Doc. 37.  Magistrate Judge Garcia properly denied Sain's request for an extension of time in which to "remove" and file the state-court records in Sain's federal suit at bar because the divorce proceedings were not properly removable, even if Sain was the defendant in those proceedings.  *See* Doc. 75; *see also Ankenbrandt v. Richards & Kesler*, 504 U.S. 687, 703 (1992) (noting that the rule that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States, . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks and citations omitted).  But Sain contends that removing and filing his state-court divorce and child-custody records into the federal record in this case would "instantly tip the balance of the case in Plaintiff's favor and thereby cause him to win the case on all matters and be granted the relief he seeks which includes a substantial monetary award."  Doc. 116 at 2.

In response to Snyder's contention that Sain's Complaint must be dismissed because he is effectively seeking review of the state-court judgments and decisions, Sain contends that the *Rooker-*

13

*Feldman* doctrine "is merely another immunity myth fabricated by judges," Doc. 72 at 2, and that

the doctrine is void because it arises from cases that have been overruled, *see id.* at 3-5. The Court

disagrees with both contentions.

After carefully considering Sain's Complaint and his Errata, it is clear to the Court that all

of Sain's constitutional claims – except for his claims against Attorney General Gary King[2] and

Governor Bill Richardson, which are based on allegations that the two officials failed to intervene

in the divorce proceedings – are based on the events occurring during the proceedings and the

allegedly erroneous rulings or refusals to rule of the state courts, which "are obviously 'inextricably

intertwined' with the state court decisions in a judicial proceeding." *Van Sickle v. Holloway*, 791

F.2d 1431, 1436 (10th Cir. 1986) (holding that the district court did not have jurisdiction, under the

*Rooker-Feldman* doctrine, over the plaintiff's § 1983 claims that the state-court judges had violated

his constitutional rights by refusing to rule on his slander claims); *see Mann v. Boatright*, 477 F.3d

1140, 1147 (10th Cir. 2007) (holding that, because the plaintiff sought "monetary damages against

a variety of government actors and private individuals for the alleged violations of her constitutional

rights occasioned by their complicity with the [state-] court's orders," she asserted "injuries based

on the [state-] court judgments and, for her to prevail, would require the district court to review and

reject those judgments. As such, her claims are inextricably intertwined with the [state-] court

judgments and are therefore barred by the *Rooker-Feldman* doctrine."); *Neilson v. Memmott*, No.

98-4229, 198 F.3d 258, 1999 WL 1029133, *1-*2 (10th Cir. Nov. 12, 1999) (holding that district

court lacked subject-matter jurisdiction under *Rooker-Feldman* doctrine to consider action brought

under § 1983 for damages from the various defendants for alleged violation of plaintiff's civil rights

---

[2] The Court dismissed Sain's claims against King for failure to state a claim. *See* Doc. 176.

resulting from their parts in requesting, issuing, and complying with subpoenas after state court denied plaintiff's motion to quash subpoena because request for damages and other relief was "inextricably entertwined" with the state-court's judgment).  To find in favor of Sain on his § 1983 claims would require this Court to conclude that the state district and appellate courts erred in issuing their rulings.  Sain's claims require extensive consideration of the underlying state-court decisions and rest on the premise that the rulings were erroneous.  Consequently, as in *Mann*, *Van Sickle* and *Neilson*, the Court does not have authority to review the state-court decisions, and Sain's causes of action against the Defendants except for King and Richardson must be dismissed for lack of subject-matter jurisdiction.  *See Pennzoil Co.*, 481 U.S. at 25.

### C.   The Court will set aside the entry of default against Richardson and deny the motion for reconsideration.

On December 1, 2008, the Clerk of the Court filed an entry of default against Richardson. *See* Doc. 64.  Richardson quickly moved to set aside the entry of default the next day, *see* Doc. 70, and the Court has entered an order denying Sain's motion for default judgment against Richardson because Sain failed to properly serve Richardson.  *See* Doc. 175, filed April 2, 2009.  In the Order, the Court stated that Sain could properly re-serve Richardson and the other Defendants "within 120 days from the date he filed the Complaint," but by the time the Court issued its ruling, the 120-day time period had already passed.

Sain has moved for reconsideration of that order on his assertion that Judge Browning was obviously biased against him because he is friendly with the judges of the New Mexico state courts, and because he believes the ruling is wrong.  *See* Doc. 178 at 3.  He accused Judge Browning of "sinister motives" in denying his motion for default judgment and also contended that, by issuing the Order denying Sain's motion and setting aside the clerk's entry of default against other state

15

Defendants, Judge Browning "has wilfully and intentionally violated Plaintiff's Rights and Federal law" and was required to recuse. *Id.* at 16. Although Judge Browning quite properly refused to recuse on the basis of Sain's spurious accusations, *see* Doc. 182, Sain's case was reassigned to another judge.

As a preliminary matter, the Court concludes that Sain provides no valid basis for reconsideration of the April 2 Order denying the motion for default judgment. As discussed below in more detail, Sain is wrong that the Attorney General is the Governor's authorized agent for service of process. Rule 1-004H(1)(e) of the New Mexico Rules of Civil Procedure specifically provides that "service of process on the governor . . . may be made either by serving a copy of the process to the governor . . . or to the receptionist of the state officer." Sain has never properly served Governor Richardson. The Court concludes, therefore, that Sain's motion for reconsideration must be denied and Richardson's motion to set aside the entry of default must be granted.

### D.       Sain's complaint against Richardson must be dismissed.

The Federal Rules of Civil Procedure requires plaintiffs to serve a copy of the summons and complaint to an individual within the Court's federal judicial district either in the manner prescribed by that State's law, or by delivering a copy of the summons and complaint to the defendant personally, by leaving copies at the individual's dwelling, or by delivering copies to the individual's authorized agent. FED. R. CIV. P. 4(e). Richardson's motion to dismiss is based on FED. R. CIV. P. 4(m), which provides, in part:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  "The good cause provision of Rule 4[(m)][3] should be read narrowly to protect

only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  *Despain*

*v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) (internal quotation marks

omitted) (holding that, where the plaintiffs failed to serve the proper parties, good cause was not

shown even though the statute of limitations had run, the plaintiffs had misinterpreted the applicable

rule of procedure, the defendants failed to show that they would be prejudiced by an extension, and

the defendants may have had actual notice of the lawsuit).  As Richardson points out, March 2, 2009

was the 120th day after the Complaint was filed in this matter, and Sain still has not properly served

Richardson.

The relevant subsection of Rule 1-004 of the New Mexico Rules of Civil Procedure

provides:

> service of process on the governor, attorney general, agency, bureau, department,
> commission or institution may be made either by serving a copy of the process to the
> governor, attorney general, or the chief operating officer of the entity listed in this
> subparagraph or to the receptionist of the state officer.  A cabinet secretary, a
> department, bureau, agency or commission director or an executive secretary shall
> be considered as the chief operating officer.

Rule 1-004H(1)(e) NMRA

Thus, Rule 1-004 specifically provides for service of process either personally or, because

he is a "state officer," by serving the governor's receptionist.  Sain contends that he properly served

Richardson by serving the Attorney General, whom he erroneously contends is the Governor's agent

for service of process by misinterpreting N.M.S.A. 1978, § 38-1-17D.  That statute provides:

> In any action in which an officer, official or employee of the state or one of its
> branches, agencies, bureaus, departments, commissions or institutions is named a
> party defendant, service of process shall be made on the officer, official or employee

---

[3]  FED. R. CIV. P. 4(j) (1987) was amended in 1993 and is now codified as FED. R. CIV. P. 4(m).

17

and on the attorney general.

N.M.S.A. 1978, § 38-1-17D.  This statute clearly requires service of process upon *both* a State

officer or official *"and"* on the Attorney General, and Sain ignores the conjunctive requirement.

Further, Rule 1-004H(1)(e) is consistent with the New Mexico statute related to service of process,

which provides:

> Service of process on the governor, attorney general, agency, bureau, department,
> commission or institution or head thereof shall be made either by handing a copy of
> the summons and complaint to the head or to his receptionist.  Where an executive
> secretary is employed, he shall be considered as the head.

N.M.S.A. § 38-1-17H; *see Trujillo v. Goodwin*,138 N.M. 48, 50, 116 P.3d 839, 840-41 (N.M. Ct.

App. 2005) (holding that, because § 38-1-17H requires personal service by "handing" the summons

and complaint to the officer, mailing or faxing them the complaint is not sufficient).  Sain has failed

to satisfy the requirements of FED. R. CIV. P. 4(m) and has failed to show good cause for doing so,

thus his cause of action must either be dismissed or, under the Rule, the court may consider granting

an extension of time in which to serve Richardson.

     Sain's only allegation involving Governor Richardson is that he refused to interfere with

Sain's judicial proceedings.  Those facts will not support a violation of § 1983 because Sain does

not have a constitutional right to have the Governor violate the separation-of-powers doctrine, and

to state a claim under § 1983 a plaintiff must allege that the defendant, acting under color of law,

deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution" or other

federal law.  42 U.S.C. § 1983.  If Sain were given an extension of time in which to serve

Richardson, the Court would have to dismiss those claims with prejudice.  The Court, therefore, will

not exercise its discretion to allow Sain an extension of time in which to serve Richardson.  *See*

*Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

**E.    Even if the Court did have subject-matter jurisdiction over Sain's suit against the remaining Defendants, Sain's claims would have to be dismissed for failure to state a claim.**

If the Court were to reach the substantive merits of Sain's claims against the remaining Defendants (other than Richardson and King), it would be compelled to dismiss his causes of action against all Defendants with prejudice.

**1.    Sain's claims brought under §§ 1981, 1982, and 1985 must be dismissed.**

Although he does not specify which subsection of 42 U.S.C. § 1985 the Defendants allegedly violated, the Defendants correctly point out that § 1985(1) applies only to conspiracies to interfere with a United States officer or a person about to assume the role of a United States officer; and that § 1985(2) applies only to conspiracies to intimidate witnesses or otherwise obstruct justice in federal courts, not state courts. *See* 42 U.S.C. § 1985(1),(2); *see also Kush v. Rutledge,* 460 U.S. 719, 719 n. 1 (1983). Sain does not allege that any Defendant interfered in any respect with an act by a United States officer or with a federal court proceeding. Sain does allege that he has been denied the equal protection of the laws because the district-court judges selectively enforced the interim orders. The Court, therefore, assumes that Sain is attempting to allege violation of § 1985(3).

Claims under §§ 1981 and 1982 require allegations supporting intentional discrimination resulting from a defendant's racial animus. *See, e.g., Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (construing § 1981); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616 (1987) (construing § 1982). Section 1985(3) requires that the plaintiff allege "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Griffin v.Breckenridge*, 403 U.S. 88, 102 (1971). Further, the complaint must allege that the alleged conspiracy is motivated by a "racial or otherwise class-based, invidious discriminatory animus behind the conspirators'

action." *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 829-30 (1983) (internal quotation marks omitted); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Sain has not alleged that any Defendant engaged in a class-based or racial conspiracy against him or intentionally discriminated against him on the basis of his race. In the alternative, therefore, the Court would dismiss all of Sain's claims brought pursuant to §§ 1981, 1982, and 1985(3) for failure to state a claim.

### 2. Sain has failed to state a cognizable claim against any remaining Defendant under § 1983.

#### i. The judges and settlement facilitator are entitled to absolute immunity.

It is well established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). To determine whether a defendant is entitled to absolute judicial immunity, courts consider whether the act itself is a function normally performed by a judge and whether the judge acted in his judicial capacity. *See id.* at 362. Absolute immunity exists even if the judge's "exercise of authority is flawed by the commission of grave procedural errors," *id.* at 359, and "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted). Absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights." *Pierson v. Ray*, 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

If claims against hearing officers presiding over an adjudication arise out of their adjudicatory acts or decisions, they also are entitled to absolute quasi-judicial immunity. *See Butz v. Economou*, 438 U.S. 478, 512-14 (1978) (holding that agency hearing examiners were entitled to absolute quasi-judicial immunity because their role was "functionally comparable" to that of judge); *Hennelly v. Flor de Maria Oliva*, No. 06-2265, 237 Fed. Appx. 318, 320 (10th Cir. May 20, 2007) (affirming the dismissal of § 1983 claims against both the New Mexico state court judge presiding over a child-custody case and the hearing officer who issued recommended rulings because the "allegations concerned actions [the] Judge [] and Officer [] took in their judicial capacities within the jurisdiction of the state court").

A careful review of Sain's Complaint and Errata show that he complains only of various judges and the settlement facilitator, Defendant Elizabeth Whitefield, making judicial or quasi-judicial rulings while acting in their official capacities in a case over which the judges and facilitator had jurisdiction. All of the judges and the settlement facilitator, therefore, are absolutely immune from suit and, in the alternative, the Court would dismiss the claims against them with prejudice.

> **ii.    The private parties are not subject to liability under § 1983 because they are not state actors.**

In order to prevail on a § 1983 claim alleging a deprivation of constitutional rights, a plaintiff must show that he was injured as a result of state action. *See Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir. 1995). Private conduct, "no matter how . . . wrongful," may not be redressed by a § 1983 claim. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). Snyder and her attorneys Chappelle and Bennett, and Richard Stoops, who was appointed as the guardian ad litem for Sain's and Snyder's children, are all private actors, and, therefore, are not subject to liability under § 1983. *See Beedle v. Wilson*, 422 F.3d 1059,

1073 (10th Cir. 2005) ("The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983.") (internal quotation marks omitted).

A private party may be considered a state actor, however, if: (1) "there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the State itself, " *Gallagher*, 49 F.3d at 1448 (internal quotation marks omitted); or (2) the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity[,]" *id.* at 1451 (internal quotation marks omitted); or (3) "a private party is a willful participant in joint action with the State or its agents, " *id.* at 1453 (internal quotation marks omitted); or (4) "the state delegates to a private party a function traditionally exclusively reserved to the State," *id.* at 1456 (internal quotation marks omitted).  It appears that Sain is attempting to base liability under § 1983 against private actors on the "joint action" theory by baldly alleging a conspiracy between Stoops, Snyder, Chappelle, Bennett, and Judge Romero to quash a subpoena, obtain an order of civil contempt or a restraining order, or to tamper with the record by failing to file exhibits in the record or by replacing those exhibits or by deleting part of the recorded transcript.

But "a private party's mere invocation of state legal procedures does not constitute joint participation [with a judge] and thus is not state action" *Read v. Klein*, No. 99-5058, 1 Fed. Appx. 866, 871, 2001 WL 20818, **5 (10th Cir. January 9, 2001) (affirming dismissal of § 1983 action against private party and his attorney for obtaining an order that the plaintiff alleged violated his constitutional rights ).  Further, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state . . . judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must

specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983). This "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as [is] the state court judge[ ] here." *Id.* Sain's conclusory allegations of conspiracy are not sufficient to show state action by Stoops, Snyder, Chappelle, or Bennett. Thus, if the Court were to alternatively reach the merits of this case, the Court would dismiss the 1983 claims against them with prejudice.

### iii.    Sain has not stated a cause of action against Duran, Ruiz, De Herrera, Madrid, Salcedo, or the Bernalillo County Sheriff's Office.

Sain's only allegations involving Duran are that she told him he had to put requests for information in writing and that she was negligent in failing to ensure that court records were not tampered with. His only claims against Ruiz and DeHerrera are that they, too, negligently failed to make or enforce a policy that would ensure that records were not tampered with. Telling a person that he needs to put a request in writing does not violate a constitutional right. And "[n]either simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983." *Woodward v. City of Worland*, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992). Therefore, the Court would dismiss Sain's claims against Duran, Ruiz, and DeHerrera with prejudice for failure to state a claim.

Sain's only allegation involving Madrid is that she supervised Salcedo and that Salcedo filed a motion to quash a subpoena, which was granted. But "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation," *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997), and Sain does not allege that Madrid was personally involved in Sain's case. Thus, to the extent Sain attempts to hold Madrid liable as a supervisor, the theory of negligent supervision cannot provide a basis for liability under § 1983. *See Darr v. Town of Telluride*, 495

F.3d 1243, 1256 (10th Cir. 2007).  Further, "there is no concept of strict supervisor liability under

section 1983."  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quotation marks omitted).  "[I]t

is not enough for a plaintiff merely to show a defendant was in charge of other state actors who

actually committed the violation."  *Id.*  Rather, "the plaintiff must establish a deliberate, intentional

act by the supervisor to violate constitutional rights."  *Id.* at 994-95 (quotation marks omitted).

Further, Sain has not stated a violation of his constitutional rights by alleging that Salcedo filed a

motion to quash a subpoena.  If it reached the merits, the Court would dismiss the claims against

both defendants with prejudice for failure to state a claim.

The only facts Sain alleges regarding the Bernalillo County Sheriff's Department is that

certain unnamed deputies carried out Judge Lang's order to accompany Sain to hearings within the

courthouse.  These allegations do not support a claim for violation of Sain's constitutional rights,

and, as an alternative holding, the Court would dismiss Sain's claims against the Bernalillo County

Sheriff's Department with prejudice for failure to state a claim.

**F.     The Court will deny the motions to amend as futile.**

As was his practice in the state-court proceedings, when Magistrate Judge Garcia, acting in

his capacity as the assigned magistrate judge with jurisdiction to make certain rulings in this case,

issued procedural rulings adverse to Sain, he contended that Judge Garcia was "lying" and

"fabricating false allegations against" Sain and that his rulings demonstrated an "intent to corruptly

influence the outcome of this case."  Doc. 85 at 4-12.  Sain contends that Judge Garcia violated

Sain's constitutional rights by issuing the rulings and by not issuing similar rulings adverse to the

Defendants, thereby purportedly conspiring with them.  *See id.* at 11-18.  Sain seeks to amend his

federal complaint to add Judge Garcia as a Defendant.  *See* Docs. 85, 116.  As mentioned, *supra*,

judges are absolutely immune from suit under the circumstances in this case, and Sain's amendment

seeking to add Judge Garcia as a Defendant would be futile, so the Court will deny the motions to amend.

**G.      Recusal is not necessary in this case.**

On January 22, 2009, Judge Browning wrote a letter to the parties informing them that he knew and/or was professionally or casually friendly with certain of the Defendants in this case. *See* Doc. 127. He advised them that he believed he could be impartial despite his acquaintance with the Defendants, but informed the parties that if anyone desired the case to be reassigned to another judge, he or she need only contact the clerk of court. *See id.* at 5. No one requested reassignment. After receiving Judge Browning's first opinion and order that was adverse to him, however, Sain bitterly complained in April 2009 that Judge Browning had an "obvious conflict of interest" and was "as corrupt as [Judge] Garcia" because of his acquaintances, and he asserts that Judge Browning should have disqualified or recused himself from hearing the case. *See* Doc. 178 at 2. Of course, "[t]he judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Franks v. Nimmo*, 796 F.2d 1230, 1234 (10th Cir. 1986). Sain has now threatened to sue Judge Browning.

The case was randomly reassigned to me on April 10, 2009. I, too, am professionally acquainted with many of the state-court judges whom Sain has sued, and of course I have a collegial, professional relationship with Judge Garcia and Judge Browning. I do not believe, however, that my relationship with these judges requires my recusal from this case. Further, especially in light of the history and posture of this case, I have no doubt that I can remain impartial. I believe the better course is for me to remain in the case and resist recusal.

Although federal judges are required to avoid the appearance of bias or partiality and to

recuse themselves if their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a),

> [a] judge's duty to hear cases is not so ephemeral that it dissipates at the first sight
> of any potential bias or partiality towards one of the litigants. *United States v. Hines*,
> 696 F.2d 722, 729 (10th Cir. 1982) ("[S]ection 455(a) must not be so broadly
> construed that it becomes, in effect, presumptive, so that recusal is mandated upon
> the merest unsubstantiated suggestion of personal bias or prejudice."). Moreover,
> "[t]he statute is not intended to give litigants a veto power over sitting judges, or a
> vehicle for obtaining a judge of their choice." *United States v. Cooley*, 1 F.3d 985,
> 993 (10th Cir.1993). *Cooley* expressly states that prior adverse rulings and "baseless
> personal attacks on or suits against the judge by a party" are not cause for recusal.
> *Id.*

*Armstrong v. Potter (In re Potter)*, 292 B.R. 711, 711 n.1, 2002 WL 31802978, **1 (10th Cir. BAP

2002) (refusing to recuse even though the plaintiff had filed a separate civil suit in federal court

against each of the judges on the appellate panel, alleging that the judges denied his constitutional

rights by issuing previous rulings and seeking to prohibit the appellate panel from hearing any

matters to which he was a party). Magistrate Judge Garcia had no duty to recuse or disqualify

himself because his rulings were adverse to Sain or because Sain accused him of conspiring with

the Defendants and threatened to sue him. *See Liteky v. United States*, 510 U.S. 540, 555 (1994)

("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion");

Committee on Codes of Conduct, Compendium of Selected Ethics Opinions § 3.6-7 (2007) ("A

judge need not recuse from a case involving a party that filed suit against the judge, where judicial

immunity will be a complete defense to the action against the judge."). And Judge Browning had

no duty to recuse or disqualify himself simply because he was professionally or casually acquainted

with the Defendants. Sain's remedy is to appeal from the rulings, not to sue the judges.

Although I predict that Sain will accuse me of bias and threaten to sue me when he receives

this ruling, I will not recuse from this case. 28 U.S.C. § 455 "places the judge under a self-enforcing

obligation to recuse himself where the proper legal grounds exist." *In re McCarthey*, 368 F.3d 1266,

1269 (10th Cir. 2004).  I first note that, at this point Sain has not sued me and no statute requires my recusal.  But even where a litigant has sued all of the judges in a district, the rule of necessity allows one of the judges sued to preside over the case.  Thus, while the Court could arrange for an out-of-district judge to preside over Sain's case, it is not necessary even where recusal would normally be required by statute under the facts of this case.  *See Bolin v. Story*, 225 F.3d 1234, 1238-40 (11th Cir. 2000) (explaining that when a litigant sues all judges but one, the rule of necessity permits the court to hear the case and reject recusal).

The initial inquiry for recusal "is whether a reasonable factual basis exists for calling the judge's impartiality into question." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).  The ultimate question on in the recusal analysis is " 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.' "  *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)).  The standard is purely objective. *United States v. Cooley*, 1 F.3d at 993.  The Tenth Circuit has emphasized that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman*, 831 F.2d at 939.

Although I am familiar with certain of the state-court judges, that does not provide an objective factual basis for my recusal.  The Tenth Circuit and other courts have identified mere familiarity with the defendants as one of the factors which will not ordinarily satisfy the requirements for disqualification.  All of the judges are being sued for their official and judicial acts, for which they are absolutely immune, thus my professional or casual friendship with the other judges in this state will not provide an objective factual basis for my recusal and does not compel assignment to an out-of-district judge.  I will stand by my obligation and duty to hear this case. *Cooley*, 1 F.3d at 994.

27

## H.     Summary

The Court understands that Sain feels that he was unfairly treated in the divorce and custody proceedings and that those proceedings resulted in a painful, but inevitable, change in his life. Virtually every ruling in a divorce and custody proceeding results in a painful or adverse consequence to one of the parties.  But the allegations in Sain's Complaint and Errata, and his statements made in numerous briefs and motions demonstrate that Sain has many erroneous concepts about how basic procedural and substantive law are applied and show that he has been unable to make distinctions between legal rulings, which resulted in many adverse rulings in the state district and appellate courts.  This Court does not have jurisdiction to re-examine those proceedings and rulings that resulted in the pain or harm that Sain allegedly suffered, however.  The Court notes that it has been Sain's practice to move for reconsideration of all adverse rulings by making the same arguments he has already made and accusing the judge of bias, sinister motives, and conspiracy with the Defendants.  The Court will not entertain any further motions for reconsideration.  Sain's remedy is to appeal from the Court's final judgment that will be issued concurrently with this memorandum opinion and order.

**IT IS ORDERED** that Snyder's Motion to Dismiss [Doc. 49] based on application of the *Rooker-Feldman* doctrine is GRANTED, and Sain's claims against all Defendants except for Governor Richardson and Attorney General King are dismissed for lack of subject-matter jurisdiction;

**IT IS FURTHER ORDERED** that Richardson's Motion to Set Aside Default [Doc. 70] and his Motion to Dismiss [Doc. 165] are GRANTED, and Sain's claims against Richardson are dismissed; and

**IT IS FURTHER ORDERED** that Sain's Motions to Amend/Correct [Docs. 85, 116] are DENIED.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**